SIGNED THIS: January 19, 2012

_____
Thomas L. Perkins
United States Chief Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES R. GRUBE, | ) | No. 09-81713 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| RICHARD E. BARBER, not individually but as Trustee for the above bankruptcy estate, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 10-8011 |
| | ) | |
| SUZANNE H. GRUBE and ASSOCIATED BANK, N.A., | ) ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N**

This matter is before the Court on a motion for summary judgment filed by the Plaintiff, Richard E. Barber (TRUSTEE), as Trustee of the Chapter 7 estate of the Debtor,

James R. Grube (DEBTOR). The motion seeks judgment against the DEBTOR'S wife, Suzanne H. Grube (SUZANNE), only on two of the four counts asserted in the complaint. The TRUSTEE previously compromised his claims against Associated Bank, N.A., for $12,000, which is to be credited against any sum determined to be due the TRUSTEE from SUZANNE on Count III or IV.

The complaint alleges that within four years of bankruptcy, the DEBTOR transferred to SUZANNE his ownership interest in two entities, KMA Builders, LLC and Queenwood, LLC. The TRUSTEE seeks to avoid each transfer for actual fraud and, alternatively, for constructive fraud. The motion addresses only the actual fraud claims asserted in counts II and IV, which are brought under Bankruptcy Code section 544(b)(1) that permits the TRUSTEE to assert an avoidance claim under the Illinois version of the Uniform Fraudulent Transfer Act (UFTA), 740 ILCS 160/1 *et. seq.*

Counts II and IV of the complaint assert actual fraud claims under the UFTA which require the TRUSTEE to prove that the DEBTOR made the transfer "with actual intent to hinder, delay, or defraud any creditor." 740 ILCS § 160/5(a)(1). As an aid to determining actual intent, the statute sets out a list of eleven non-exclusive factors that may be considered, that are in the nature of badges of fraud. Badges of fraud have long been used by courts as factors for determining whether a challenged transfer was made with an intent to hinder, delay or defraud one's creditors. *See, e.g., Nelson v. Smith,* 28 Ill. 495 (1862). Because transferors rarely admit to a wrongful intent, courts use recognized badges of fraud to regularize the inquiry into whether the circumstances surrounding the transfer are such that the requisite intent may be inferred. *In re Beverly,* 374 B.R. 221, 235 (9th Cir.BAP 2007).

2

Summary judgment is appropriate where the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue arises if the record contains evidence favoring the non-moving party sufficient to permit a finder of fact to render a verdict for that party. *Johnson v. Manitowoc County,* 635 F.3d 331, 334 (7th Cir. 2011). Summary judgment requires a court to draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is not to weigh the evidence or decide which testimony is more credible. *Id.* Even if one side's story is more believable, the court must avoid the temptation to decide which party's version of the facts is more likely true. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003).

When a party charged with a fraudulent intent denies it, resolution of the issue by summary judgment is difficult, if not impossible. *P.H. Glatfelter Co. v. Voith, Inc.,* 784 F.2d 770, 774 (7th Cir. 1986); *Federal Deposit Ins. Corp. v. Lauterbach,* 626 F.2d 1327, 1334-35 n.12 (7th Cir. 1980). But where the party's denial of the requisite state of mind is "so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it," summary judgment may be appropriate. *In re Chavin,* 150 F.3d 726, 728 (7th Cir. 1998).

The DEBTOR and SUZANNE deny that he transferred his KMA and Queenwood interests with an intent to hinder, delay or defraud any creditor. Instead, they both assert that the transfers were made for estate planning purposes. In his declaration, the DEBTOR asserts that their estate planning lawyer recommended that transfers be made in order to

3

better balance their respective estates since "much of the property was in my name only." Attached to the declaration is a cover letter from the attorney's office dated February 7, 2006, in which that purpose is referenced.

The TRUSTEE contends that the DEBTOR'S story about estate planning and asset balancing is too incredible to pass muster. He suggests that if the DEBTOR and SUZANNE were being guided by counsel, it was for the purpose of asset protection, not estate planning. The TRUSTEE argues that the uncontroverted evidence demonstrates the existence of eight of the eleven statutory badges of fraud when the transfers were made, including that the DEBTOR'S business interests were all doing poorly and that KMA had equity of $1,000,000 and Queenwood had equity of $150,000 when transferred. SUZANNE disputes those equity amounts.

The published caselaw is replete with cases where a transferor cries "estate planning" when accused of transferring an asset with the intent to hinder, delay or defraud a creditor. Sometimes that defense is successful. *In re Nichols,* 447 B.R. 97 (Bankr.N.D.N.Y. 2010); *In re Burzee,* 402 B.R. 8 (Bankr.M.D.Fla. 2008); *In re Meyer,* 307 B.R. 87 (Bankr.N.D.Ill. 2004); *In re Earle,* 307 B.R. 276 (Bankr.S.D.Ala. 2002). Sometimes the defense of estate planning fails. *Merchant Transaction Systems, Inc. v. Necela, Inc.,* 2010 WL 382886 (D.Ariz. 2010); *U.S. v. Sherrill,* 626 F.Supp.2d 1267 (M.D.Ga. 2009); *Casey Nat. Bank v. Roan,* 282 Ill.App.3d 55, 668 N.E.2d 608 (Ill.App. 4 Dist. 1996). But it is always a factually intense analysis.

In *U.S. v. Kattar,* 81 F.Supp.2d 262 (D.N.H. 1999), the court was faced with a motion for summary judgment involving the issue of whether a transfer of real estate to a trust was

4

fraudulent. Two months after being indicted for tax evasion, George Kattar formed the "Seven Children Trust" pursuant to the advice of counsel as an inheritance vehicle and he and his wife transferred certain parcels of real property to the trustees. In response to the Kattars' position that the transfers were not made with fraudulent intent because they were intended to effectuate an estate plan, the government relied on a number of badges of fraud that it contended proved a fraudulent intent. After noting that the issue of fraudulent intent, which turns on credibility, is not ordinarily resolved on a motion for summary judgment, the court reasoned as follows:

> Issues of credibility are squarely before the court in this summary judgment motion. The Kattars' testimony concerning motivations and intent are corroborated by the testimony of Mary Abdoo and George P. Kattar about statements made contemporaneously with the creation of the Seven Children Trust. As discussed above, triable issues exist about the financial condition of Phyllis Kattar at the time of the Clovelly transfer. Furthermore, lawful justifications can be offered to explain a number of the indicia of fraud relied upon by the government. If, indeed, the Kattars sought to transfer the assets as part of their estate planning, the "insider" recipients of the transfers, the consideration given in exchange for the transfers, and the Kattars' continued enjoyment of the assets may possibly, given all reasonable inferences, be understood to be motivated by something other than an intent to defraud creditors. However, other factual issues, such as the chronology of events, cannot be so readily interpreted as motivated by lawful interests. In short, the court concludes that on this record and in the context of summary judgment, where all reasonable inferences are drawn in favor of the non-movants and credibility issues abound, granting summary judgment as to Phyllis Kattar's allegedly fraudulent intent would be inappropriate.

*U.S. v. Kattar,* 81 F.Supp.2d at 272.

A similar analysis is called for here and yields the same result. The DEBTOR'S denial of a fraudulent intent and assertion of a potentially non-actionable alternative, asset balancing, puts his credibility squarely at issue. Several badges of fraud are present, but the DEBTOR'S declaration does not stand alone – it is corroborated by his attorney's letter.

5

Moreover, all reasonable inferences must be drawn in favor of SUZANNE. Since the only way the TRUSTEE can prove the DEBTOR'S *scienter* is inferentially, it is impossible for the TRUSTEE to overcome the denial of *scienter* on this motion for summary judgment where the DEBTOR has offered a non-actionable, corroborated explanation for the transfers.[1] The DEBTOR'S denial is not so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it.

The Court concludes that a genuine issue of material fact exists as to whether the DEBTOR transferred to SUZANNE his interests in KMA and Queenwood with the intent to hinder, delay or defraud a creditor. Therefore, the TRUSTEE'S motion for summary judgment on Counts II and IV will be denied. It is not necessary to address the other issues raised by the parties in their briefs.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[1] The innocent explanation of estate planning does not necessarily carry the day for a transferor. It is certainly not unheard of that while such an explanation might appear valid on its face, it may actually be intended as a sophisticated subterfuge. Whether asset balancing is a true and valid motivation may depend, in part, upon whether an experienced attorney specializing in estate planning would have recommended that the transfers be made, given the assets owned by each spouse prior to the transfers. Proof of this fact would require opinion testimony subject to Rule 7026(a)(2). Counsel for the parties would not be permitted to offer their own opinions.